In the Matter of the Estate of NATHAN COHEN, Deceased.

Surrogate's Court, New York County, March 26, 1940.

*Jesse L. Rosenberg*, for the trustees.

*Ezra J. Feinberg*, for Louis A. Cohen, individually.

*Wesley S. Sawyer*, for Bertha Cohen Strudler.

*Morris & Samuel Meyers*, for Joseph Cohen, also known as Jerome Cole.

*Abraham Maranov*, for Jacob Silverstein and Kathryn A. Wendel.

*G. William Calascione*, for the receiver, Daniel F. Cohalan, Jr., on behalf of Jacob Silverstein.

*Max Silverstein*, appearing in person.

*Edwin M. Otterbourg*, special guardian.

FOLEY, S. These are motions made by the objectant, Jacob Silverstein, a former attorney for the estate, and Daniel F. Cohalan, Jr., as receiver in supplementary proceedings brought in the former's behalf, and by the objectant, Max Silverstein, a former trustee, to modify the report of the referee filed in this accounting proceeding. The referee has denied the claim of these objectants for preference and priority in the payment of certain amounts directed to be made to them under a prior decree of this court, dated July 11, 1932. That decree settled the accounts of Max Silverstein, Abraham Germansky, Louis A. Cohen and Jesse L. Rosenberg as trustees of the estate. It granted the application of Max Silverstein and Abraham Germansky for leave to resign as trustees and discharged them as such. It directed the continuing trustees to each retain the sum of $1,817.59 for their respective commissions and to pay to the resigning trustees like sums for their respective commissions. It further directed that out of the income the continuing trustees pay to Jacob Silverstein for his legal services to the trustees the sum of $1,277.60 and out of the corpus the sum of $768, costs and disbursements, and also that they pay the sum of $650 to the special guardian to be charged against the corpus of the estate. While the decree fixed the amounts due to the attorney for the estate and the amount of commissions due to the trustees and directed their payments, there were not sufficient liquid assets in the estate to satisfy them at that time. The principal assets consisted of real property.

On July 27, 1937, about five years after the entry of the decree, the objectant, Jacob Silverstein, in order to compel payment of the $768 directed to be paid to him out of the corpus of the estate, obtained an order in the Supreme Court, New York county, for the examination of the continuing trustees in supplementary proceedings and on July 28, 1937, obtained a similar order with respect to the sum of $1,277.60 directed to be paid to him out of income. It appearing upon the examination of the continuing trustees that they then had in their possession and under their control the sum of $2,000 to the credit of the estate, application was made to the Supreme Court for the appointment of a receiver in supplementary proceedings, which was granted. Thereafter two motions were made to direct the trustees to pay to the receiver the moneys due. These motions were denied by the Supreme Court without prejudice to a renewal if the trustees did not, within twenty days, institute accounting proceedings in the Surrogate's Court. Upon appeal to the Appellate Division these orders were affirmed without opinion.

The pending accounting proceeding was instituted in pursuance of the direction of the Supreme Court. It covers a period commenc-

ing April 1, 1932, and ending August 31, 1937. The account shows that at the present time the sole asset of the estate consists of one parcel of real estate yielding an annual net return of about $3,000. It shows further that the sum of $2,045.60 remains due and unpaid to Jacob Silverstein, the former attorney, and the sum of $400 due the special guardian. The amounts allowed by the decree for commissions on income to the trustees, including the resigned trustees, amounting to $6,325.12, also remain unpaid, in addition to legacies amounting to $18,000.

The former attorney for the trustees and the receiver appointed in his behalf claim that they are entitled to preference and priority as judgment creditors against the funds now in the hands of the trustees by reason of the institution of the supplementary proceedings and the appointment of the receiver. Max Silverstein, one of the resigning trustees, claims to be entitled to preference in the payment of his commissions because they were allowed to him under a prior decree of this court and before the incurrence of further administration expenses.

The referee has found that " Equity and good conscience require that claimants entitled to administration allowances and expenses in an estate in the condition revealed by this accounting should be accorded equal opportunity to satisfy their claims. In the present circumstances, the date of the allowance by the decree is relatively unimportant and whether the allowances are by prior or subsequent decree they should be accorded equal treatment and payment. The institution of supplementary proceedings by some claimants to thus secure priority to themselves is insufficient warrant to vary the equitable rule stated." I am entirely in accord with these findings of the referee and with the reasons for the disposition made by him. They are, therefore, sustained. In a situation such as exists here, the judgment against the trustees cannot be collected through supplementary proceedings. (*Jones* v. *Arkenburgh*, 112 App. Div. 483; *Collins* v. *Beebe*, 54 Hun, 318.) The proper forum for the enforcement of the judgment or claim against the estate is in this court where the estate is pending. In *Jones* v. *Arkenburgh* (*supra*), Justice INGRAHAM, writing for the court, referred to the section of the Code of Civil Procedure relating to the provision for the appointment of a receiver in supplementary proceedings, and said (p. 485): " It is quite evident that this provision does not apply to property held by a defendant in a representative capacity as executor, trustee, receiver or assignee. It is the property of the judgment debtor that is vested in the receiver. The judgment debtors in this action were the executors of the estate of a decedent, and, whether sued personally or in their representative capacity,

the property of the estate held by them was not the property of the judgment debtor. There is no provision in the sections of the Code relating to proceedings supplemental to execution which authorizes the court in such a proceeding to vest in a receiver the property of the estate against which a claim is made. As was said by the Court of Appeals in *Ward* v. *Petrie* (157 N. Y. 301), ' This action is an excursion by a receiver into a new field.' Control of the distribution of estates of decedents is vested in the surrogate, and ample power is given to the surrogate to direct payment of the claims against an estate to the legal creditors of the decedent."

The rule that supplementary proceedings may not be maintained against executors or administrators in their representative capacity was recently reaffirmed by the Appellate Division in *Villaume* v. *Nelson* (247 App. Div. 761) and is still the law. If funds in the hands of a representative of an estate were allowed to be paid over to a receiver appointed in supplementary proceedings upon the claim of a creditor, it would in effect result in the substitution of the receiver for the surrogate as the person who would directly control the distribution of the assets of an estate.

The rights of the claimant, Jacob Silverstein, or his receiver, are no greater than those of any other claimants within the same class in this estate. To permit the application of the moneys in the hands of the present trustees to the payment of the claim of Jacob Silverstein or to the claim of Max Silverstein would exhaust the fund and constitute an undue preference in their favor over all other claimants for administration expenses. Claimants for administration expenses incurred earlier or later in the course of the administration of the estate must be treated on a parity since the funds are insufficient to pay them in full. (*Sartorelli* v. *Ezagni*, 64 Misc. 115.) Had the estate been solvent at the date of the decree of July 11, 1932, and had there been sufficient assets to pay administration expenses in full, a different situation might have arisen. Failure to pay would have resulted in a disobedience of the decree of the court and the rights of the claimants to payment in full would have been protected. While there were assets consisting of real property present in the estate, their sale was specifically directed to be postponed until more favorable market conditions existed. The decree provided " that to direct a sale of the real estate at this time would result in substantial loss to all of the beneficiaries under existing conditions in the real estate market, and payment of all advancements under paragraph ' Ninth ' and all bequests under paragraph ' Eleventh ' of the Will be deferred until the realization of cash or a liquidation of part or all of the assets at a more favorable time." Necessarily the deferment of the sale of the real property

for payment of the bequests under the will carried with it the postponement of their sale for payment of administration expenses. The property could not have been sold in order to pay administration expenses without violating the decree of the surrogate.

The motions to modify the report of the referee are, therefore, denied. The report is correct in all respects and will be confirmed.

Submit decree on notice confirming the report and settling the account accordingly.